Good afternoon, Your Honors. May it please the Court, my name is David Hagighi. I am counsel for Petitioner Mr. Lim, who is here today in the courtroom. Before I begin, I just wanted to thank the Court for setting over the case today. My mother is doing a lot better. Thank you. Good to hear. Your Honors, this is a case where the adverse credibility finding is not supported by substantial evidence. This is also a case where Mr. Lim, who has been oppressed all of his life, whether having his parents and two of his sisters murdered by the genocidal communist Khmer Rouge, or having his own ankles sliced open by a government agent who is yearning for a sense of justice for his countrymen and his family alike, joined a pro-democracy group, the Cambodian Freedom Fighters, of which numerous members were arrested, beaten, tortured, and murdered. If Mr. Lim's testimony is given the full weight that it deserves, it is evident that he suffered past persecution and has a well-founded fear of future persecution, if forced to return, and therefore should have been granted asylum, withholding of removal, and deferral under the Convention Against Torture. We have identified four critical errors that were committed below by the immigration judge, affirmed by the agency, and are currently before the Court. The first three errors go to the adverse credibility finding, and the last error goes to the fact that Mr. Lim is eligible for deferral of removal under the Convention Against Torture, because torture was a significant problem for prisoners in Cambodia. Turning to the issue of adverse credibility, first the immigration judge and the agency misunderstood the term revolution. The immigration judge asserted that because Mr. Lim knew that the Cambodian Freedom Fighters supported a democratic, quote-unquote, revolution, Mr. Lim must have known that they intended to use violent means to accomplish their goals. The immigration judge and the agency failed to understand that a revolution, even an overthrow of a government, can be accomplished without violence. The world saw an example of this in 1986 in the Philippines, known as the People Power Revolution, also known as the Yellow Revolution. However, in the instance... But in this case... Yes, Your Honor. The organization did use violence. They did, Your Honor. So he is found with material that suggests revolution, and the organization then uses violence. Why isn't it fair to infer that this meant violent revolution? I mean, revolution usually does mean violent. Right. And I'm happy you brought that up, Your Honor. That's exactly where the mistake got committed. There's a... The term revolution simply means a change in the government. Here, he did have... Well, no, no, not necessarily. I mean, you know... Our revolution was violent. That's fair. The October Revolution, the glorious October Revolution was, you know, the Soviet Union, that one, was violent. The 1905 Romanian Revolution was violent. The 1907 Russian Revolution was violent. I mean, you know, there are all these examples of violent revolutions. And one can have... In fact, when a revolution is not violent, people say, oh, you know, this was a nonviolent revolution, as it were. Well, why isn't it fair to infer that when you talk about revolution, you're talking about violent... And then they go ahead and they have a violent attack, right? Yes, Your Honor. But that's exactly where I want to make clear for the Court. The materials that were found in his house for the revolution, there's nowhere in the record that says that these materials were depicting Operation Volcano or were meant to suggest that violence would occur. This is more analogous, since you brought up the Romanian Revolution in 1986, I believe. 1989, excuse me, the Romanian Revolution, where people were... The crowds were massed outside of the church, wanting to restore the priest. And who knew then that within the next week, a thousand people would be dead? It was just people coming together, people wanting the priest back, wanting a change. And then it happened. And that's my point, Your Honor. He was a low-level civilian recruit that this information would not be shared with. And all his function was to tell people to come join this party. And he was successful. He got three of his friends to come join. That was his... No, but the materials said more than join the party. It talked about a revolution, right? Not a violent revolution, Your Honor. It talked about a revolution. A democratic revolution. It said that? A democratic revolution, yes. The materials said democratic revolution? That's my understanding, Your Honor, yes. Not a violent revolution. It said not a violent revolution? No. They yearned for a democratic revolution, a system of government to be... I'm talking about the materials. You're representing something the materials said. Did the materials say not a violent revolution? The materials said a revolution to have... I'm asking you a question. I'm asking you a question. Did you hear the question? Did the materials say not a violent revolution? I believe so, Judge. It said not a violent revolution. No, it didn't underscore the fact that it's not... Okay, you said that that's what it said, but it doesn't say that, right? It doesn't... What I'm trying to simply say, Your Honor, is that it doesn't espouse a revolution. It's not espouse violence. It's not calling for violence to effectuate change. It's just saying that change is needed, and the model that they were using was the United States. You mean the way we had a violent revolution? No, I'm talking about the democratic... Didn't we have a violent revolution? I'm talking about... Remember 1776 and all that? Your Honor, I'm talking about the democratic form of government. Well, we agree it's a democratic form of government through a violent revolution, so, you know, there it is. Sometimes you have to break eggs to make omelets. That's just what happens. Anyway, you've got three minutes left. Do you want to save it for a bottle? I'd like to, Your Honor. Okay. We'll hear from the government. May it please the Court, Colin Tucker for the Attorney General. The agency's denial of the lease, in this case, withstands review for substantial evidence. The denial is based on a determination that the petitioner claims not credible, and that's a conclusion that the agency reached by identifying various implausible and inconsistent aspects of his testimony and evidence. First and foremost, as we can see from the prior presentation, is the fact that the petitioner said he possessed documents that promised a CFF revolution to overthrow the government, and that's an exact quote from the record. The materials are described on page 199 of the record as a revolution to overthrow the government. I think that even if we accept the idea of a peaceful revolution, context is important. Not the word overthrow implies force, and I think force implies violence. What's more, I think you have to take the possession of those materials in conjunction with some other aspects of the petitioner's testimony. He stated that he was aware of rumors that the CFF would engage in violence. He stated that he met on several occasions. Did you say page 199? Page 199. It's the asylum application, Your Honor. This is base stamp 199 in the record? I'm looking at page 199, and it looks to me like a Kingdom of Cambodia passport. 199, huh? Yes, Your Honor. I don't mean to trip you up. No, no. I was just going to look at what you said. It's 199 of my record, Your Honor. I know that there were two CDs filed, so I wonder if the second record that was submitted is slightly different in the pagination. I can provide the Court with a follow-up letter to point out the exacts. Do you want mine? Can you find it? Sure. Here it is. I mean, I don't have CDs and stuff like that. I only have paper. Is that different from what you have? It looks like they are. So what is it that lies, the CD or the paper? The CD seems to show the same thing on page 199. Page 184. Okay. I'm looking at it. I'm sorry. You were saying about that page? I'm saying that it refers to a CFF revolution to overthrow the government, and that the word overflow used in overthrow uses the word overthrow. Yes, I guess if you were just going to defeat the President for the election, you wouldn't say overthrow. That's what I believe, Your Honor. And I also went on to point out that he was aware of rumors, he stated in his testimony, that the CFF would engage in an armed insurrection. And furthermore, he met on several occasions with the CFF leader who was responsible for planning and carrying out the attacks eventually. Now, taken together, I think that the immigration, no reasonable fact finder would be compelled to conclude that it was anything but implausible for Petitioner to claim that he didn't understand the CFF as a violent group. Now, the BIA did not rule on the alternative ground, right? Correct, Your Honor. It relied solely on the immigration judge's adverse credibility determination. So there's nothing for us to rule there? No, Your Honor. If you were to disagree with the adverse credibility determination, I think that Ventura's ordinary remand rule would require remand so that the board could rule on that issue in the first instance. Okay. Thank you. There seems to be no questions. If there's nothing further. I have a question on the alternative ground which we don't reach, I understand. They found that he was. They didn't say if. They say the court also finds that he is ineligible for asylum. Because he did engage in terrorist activity. Is that right? They found that he did engage in terrorist activity? I think that it's an alternative finding, Your Honor, in which they hold that even if he is credible. But they didn't say even if, did they? I don't know if they used that specific line. They said the court also finds that he is ineligible because he's an alien described in all these sections, which was that he engaged in terrorist activity. And I know that they don't want us to reach that. But I just wondered how he could be. It could be not credible when he said he did belong and then also be guilty of the alternative of engaging. And I think the impossibility of that scenario, Your Honor, is why it can only be an alternative determination. It could be that the confusion that would arise from the wording in the immigration judge's decision is also the reason the board decided not to address that issue and stuck solely with the credibility determination. Well, so the I.J. says, I find him not credible and therefore I find him to be a member of this organization. Then he engaged in terrorist organization and is therefore ineligible on those grounds. But he could. But if he if he were believed, then he would have engaged in a he would have been admitted to being a member of the organization. Yes. But not knowing that he is that is engaged in terrorist activities. I'm trying to understand what it means if the I.J. is finding the first. What would be the consequence of disbelieving the I.J.'s findings? Of disbelieving the I.J.'s findings. Or discrediting I.J.'s credibility findings. The finding would be in that case that he was, in fact, a member of this group, but that he understood that. But that he engaged. As a result, he engaged in terrorist activities because the group is a terrorist group. But his story is he was a member of this organization and he didn't know they were engaging in terrorist activities. That's correct, Your Honor. Sir, we're now in the alternative universe. And the question is, if we were to reverse that finding, would it be possible to have the alternative? I think that we would have to give the board the opportunity to find out to determine whether the alternative applies. Under the ordinary remand rule. Yes. OK. If there's nothing else, I'm prepared to submit. Looks like there's nothing else. Thank you. I still have a problem. The first finding is based on the foregoing. The court is unconvinced that he was ever a member of the CFF. So the first finding is that he wasn't. You don't believe he's a member of the CFF. Yes. Then there's nothing that says if we're wrong. It says the court also finds that he's in the bottom of A.R. 81. I don't know. Different places. Dates on by 81. However, even if you were found to be credible responding, it's ineligible for asylum because he's a person who's engaged in terrorist activities, a member of a terrorist organization, as well as part of a terrorist organization. And later when it goes into more particular parts of that on 83, if he's deemed credible, so on and so forth. Page 83. Page 83. So the first thing I read was from page 81. The second page. And where is the second 81 to the bottom of the page? I have a 83 is one to the first sentence of the first third full paragraph. In the present case, a plaintiff is deemed credible and goes on the balance of that paragraph. But the paragraph above that I'm concerned about the page 81. They're talking about the terrorist. And since the court finds page 12 or page 83, second part full paragraph, the court also finds that he is ineligible as he is. And they haven't described it seemed to me to be a finding. I think it's I think it's a finding in the in the alternative. OK. It's a finding. Well, I'm just concerned about how you can find in one place that he is not a member of the group and then find here that he is a member. But I OK. It just seems to me that is peculiar and maybe we don't reach it. It says if if petitioners taken at his word and he's a member of the group, then under the regulation, the burden is on the act. The burden is on him to prove by clear and convincing evidence. He did not know the terrorist element. And you could find, OK, you remember the organization, but you haven't shown by clear and convincing evidence that you didn't know about the terrorism. OK. We have I can see that my time's up, Your Honor. OK. Thank you. Thank you. You have about three minutes left for a bottle. You're familiar with the page with government counsel pointed to where you're trying to use the word overthrow. I just have a moment. Your Honor, what page is that on? One eighty four. For the administrative record. Correct. Toward the bottom of the page. It's under number three. This is fair. It starts with a number three. Documents related to. Yes. Yes. Yes, Your Honor. What would you like an answer? Well, the folks in the world overthrow. It's not revolution. You know, it doesn't say by election. It says to overthrow. Overthrow usually means violence. In the normal sense, that's accurate. However, respondent is not filling out this asylum application. By himself. And neither was English his primary language. This is someone who helped him fill out this asylum application. So now somehow he is bound to. That's an explanation. But why isn't that enough to support the IDS finding? Because, Your Honor, again, when we get back to my original premise that overthrow doesn't may in certain instances. No, no. Your argument was that revolution doesn't mean violence. Overthrow is a different word altogether. I mean, we had that discussion. What I was told doesn't doesn't mean it. But overthrow is much harder to give it up because overthrow. You know, it's a violent. I can't even imagine. I can't recollect anybody has ever said. Well, we had an election and we said, well, you know, the challenge of the presidency seeking to overthrow the government. We don't talk about those things. But we saw an example, a real world example, Judge. The Philippines. Again, the people power revolution overthrew the then government of Fernan Marcos. That was nonviolent. But he was overthrown. No one could argue otherwise. He was in the middle of this presidency. And through civil disobedience, the president was overthrown. So I don't think that in every respectfully, in my opinion, I don't think that in every single situation, the word overthrow would imply violence. It's just it's not as easy as a. Why can't the IJ go with a common definition? I mean, it's hard to find one example. I'm not even sure I find the example persuasive, but assuming there is an example otherwise, why can't the IJ look at the language and say I'm tired of fact? I read it in its natural common meaning to say overthrow means overthrow means by violent means. That's why we have ties of fact, right? And this is where we find ourselves in a quandary, Your Honor, because now we're left to argue in the alternative when the agency never reached a determination of the alternative. So if we want to look behind that door, I think that the correct thing, as counsel pointed out, is to remand it under INS de Ventura and let the agency take the first crack at that. And if they get it wrong, then we'll come back here. But it's difficult then to sit here and to gauge that, to say, look, you know, because someone has bound him to that word and the court feels that that word is charged or that word somehow implies violence in every single time that it's used, then it's not fair to the petitioner, Your Honor. Okay. I think we understand the argument. Case is argued and submitted. We're adjourned.
judges: Kozinski, Reinhardt, Clifton